DECISION
{¶ 1} Relator, Donna Caudill, commenced this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying her application for temporary total disability ("TTD") compensation on the basis that she had voluntarily abandoned her employment with respondent, Leisure Lawn, Inc., and to issue a new order granting said compensation.
 {¶ 2} Pursuant to Civ.R. 53 (C) and Loc.R. 12(M) of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision including findings of fact and conclusions of law (attached as Appendix A). Therein, the magistrate noted it was undisputed that relator was released to return to work, with restrictions. The magistrate found that relator did not return to work, but rather left her employment as a result of relator's fear of retaliation for having reported alleged sexual harassment. The magistrate concluded there was some evidence in the record supporting the commission's order, to wit: evidence that relator left her employment voluntarily and for reasons wholly unrelated to the allowed conditions in her claim. The magistrate thus concluded that it was not an abuse of discretion for the commission to find voluntary abandonment and to deny relator's application for TTD compensation on that basis. Accordingly, the magistrate determined the requested writ of mandamus should be denied.
 {¶ 3} In her objections to the magistrate's decision, relator does not object to the magistrate's findings of fact but does object to the magistrate's conclusions of law with respect to the issue of voluntary abandonment. However, relator has raised no authority or arguments for our consideration that were not already presented to and addressed by the magistrate.
 {¶ 4} Upon a full review of the record we find that there is some evidence in the record supporting the commission's determination that relator voluntarily abandoned her employment. It is undisputed that relator was medically cleared to return to work, yet did not do so.
 {¶ 5} Following an independent review of the record pursuant to Civ.R. 53, and due consideration of relator's objections, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we overrule relator's objections, adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, and deny the requested writ of mandamus.
Objections overruled; writ of mandamus denied.
McGrath and Travis, JJ., concur.
 (APPENDIX A) IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Donna Caudill, : Relator, : v. : No. 05AP-216 Leisure Lawn, Inc. and : (REGULAR CALENDAR) Industrial Commission of Ohio, : Respondents. : :
 MAGISTRATE'S DECISION Rendered on August 31, 2005 Casper Casper, and Mark A. Summers, for relator.
Vorys, Sater, Seymour and Pease LLP, and Rosemary D. Welsh,
for respondent Leisure Lawn, Inc.
Jim Petro, Attorney General, and Kevin J. Reis, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 6} Relator, Donna Caudill, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied her application for temporary total disability ("TTD") compensation on the basis that she had voluntarily abandoned her employment with respondent Leisure Lawn, Inc. ("employer"), and ordering the commission to find that she is entitled to that compensation.
Findings of Fact:
 {¶ 7} 1. Relator sustained a work-related injury on September 28, 2000, and her claim was originally allowed for "sprain right shoulder."
 {¶ 8} 2. On October 13, 2000, relator's treating physician released her to return to work with restrictions indicating that she was not to carry/lift/push/pull more then 20 pounds and with no overhead lifting.
 {¶ 9} 3. On February 7, 2001, relator filed a motion requesting TTD com-pensation from November 21, 2000 through April 9, 2001, and to continue based upon the C-84 completed by Dr. Enrique C. Martinez. On that C-84, Dr. Martinez indicated that relator was disabled due to a supraspinatus tendon tear of her right shoulder which, at the time, was not a recognized condition of the claim. Relator's motion was denied.
 {¶ 10} 4. By Ohio Bureau of Workers' Compensation ("BWC") order dated August 30, 2001, relator's claim was additionally allowed for "tear rotator cuff[,] right."
 {¶ 11} 5. Relator's appeal from the district hearing officer's ("DHO") order denying her request for TTD compensation because Dr. Martinez certified her as being disabled due to a nonallowed condition was heard before a staff hearing officer ("SHO") on October 9, 2001. The SHO modified the prior DHO order but denied the period of TTD compensation for the following reasons:
It is the finding of the Staff Hearing Officer that the claimant's request for the payment of temporary total disability com-pensation benefits from 11/21/00 to 4/9/01 is denied. The Staff Hearing Officer finds that the claimant left her position of employment as of 10/20/01, for reasons unrelated to the 9/28/00, industrial injury. The claimant stated that she was afraid of her employer due to pending lawsuit and was told by them that it would not be safe to return to work.
This order is based on the claimant's testimony.
 {¶ 12} 6. As indicated in the above SHO order, the commission specifically relied upon relator's testimony at the hearing to determine that she had voluntarily abandoned her employment for reasons unrelated to her injury. On cross-examination, the following exchange took place between counsel and relator:
[Richard L. Moore ("Employer's Counsel")] Q. Miss Caudill, you had called an employee of Leisure Lawn, specifically Mr. Tim Ziegert, on October 23, 2000; is that right?
[Relator] A. I guess, yeah.
[Employer's Counsel] Q. And at that time you had left him a message telling that you had already removed all your personal things from your desk at work; is that right?
[Relator] A. Uh-huh, yes.
[Employer's Counsel] Q. And you left your keys and all the other company property there at work, right?
[Relator] A. Yes.
[Employer's Counsel] Q. And you told them that you would not be showing up for work because you had filed a lawsuit against the company, correct?
[Relator] A. I told them I was afraid to come because I was afraid of Mr. Baker because of the lawsuit.
[Employer's Counsel] Q. So at that point you had resigned from your position at Leisure Lawn, correct?
[Relator] A. I didn't resign, no.
[Employer's Counsel] Q. You quit?
[Relator] A. No.
[Employer's Counsel] Q. You didn't come back.
[Relator] A. I asked him would it be safe for me to come back, and he told me no.
* * *
[Douglas W. Casper ("Relator's Counsel")] Q. Well, apparently the claimant — you quit working — well, the EEOC has documented a sexual harassment lawsuit on your behalf?
[Relator] A. Right.
[Relator's Counsel] Q. Is that the main reason you departed the employer?
[Relator] A. Yes, Mr. Baker would come in drunk to work every day.
[Relator's Counsel] Q. Alright. Now, were you trying to look for work after that?
[Relator] A. Yes, I did.
[Relator's Counsel] Q. What prevented you from finding a job?
[Relator] A. I kept hurting. I filed for unemployment, then sent out resumes, but I really, I didn't know what I was going to do because I couldn't work. They were telling me it was a sprain so I kept thinking it would heal and by the time I found a job would be okay.
[Relator's Counsel] Q. So it's your testimony you were looking for work but the shoulder was a hinderance [sic] for you?
[Relator] A. Uh-huh.
* * *
[Relator's Counsel] Q. And you intend to go back to work once they fix the shoulder, right?
[Relator] A. Oh, yeah. I applied for surgery in March, and because it hadn't been changed from a sprain to a torn rotator cuff they wouldn't let me have it.
(Tr. 5-9.)
 {¶ 13} 7. Relator's appeal was refused by order of the commission mailed October 1, 2001.
 {¶ 14} 8. Thereafter, relator filed a second motion for TTD compensation on February 5, 2002. The matter was heard before a DHO on August 1, 2002, and was granted in part and denied in part. Relative to the period of March 12 through June 3, 2002, the DHO allowed TTD compensation because relator had surgery for her shoulder and the DHO concluded that was a new and changed circumstance warranting the payment of TTD compensation. However, for the period November 21, 2000 through April 9, 2001 and continuing, the DHO denied the compensation based upon relator's voluntary abandonment of her job as found in the October 2000 SHO order.
 {¶ 15} 9. Both relator and the employer appealed and the matter was heard before an SHO on November 26, 2002. The SHO vacated the prior DHO order and denied all TTD compensation for the following reasons:
The C-84 filed by the injured worker on 2-5-02 requesting payment of temporary total compensation for the period of 1-31-02 to 3-18-02 is denied.
The Hearing Officer finds that the Industrial Commission has previously determined that the injured worker left her position of employment on 10-21-01 for reasons unrelated to the 9-28-00 industrial injury and this barred a subsequent period of temporary total compensation. This determination was made per Staff Hearing Officer order dated 10-9-01.
The Hearing Officer finds that the injured worker has failed to obtain other employment and has not returned to the work-force since 10-21-01, based on the injured worker's testimony at hearing.
The Hearing Officer finds that the injured worker's voluntary departure from employment operates to sever the causal connection between the injured worker's injury and the injured worker's actual loss in wages and therefore precludes the payment of temporary total compensation.
The Hearing Officer decision is based on the injured worker's testimony at hearing, State ex rel. Baker v.Industrial Com-mission (2000) 89 Ohio St. 3d 376, and Stateex rel. McCoy v. Dedicated Transport, Inc. (2000),97 Ohio St. 3d 25.
 {¶ 16} 10. Relator's appeal was refused by order of the commission mailed December 21, 2002.
 {¶ 17} 11. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 18} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 19} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occur: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is capable of returning to the claimant's former position of employment; (3) when work within the physical capabilities of the claimant is made available by the employer or another employer; or (4) when claimant has reached MMI. See R.C.4123.56(A) and State ex rel. Ramirez v. Indus. Comm. (1982),69 Ohio St.2d 630.
 {¶ 20} In the present case, it is undisputed that relator was released to return to work with restrictions. The record also reveals that relator did not return to work and instead, she left employment with the instant employer because of allegations of harassment. Thereafter, relator had surgery for her shoulder and requested TTD compensation. Because the commission found that relator had left her employment, for reasons unrelated to the allowed conditions in her claim, the commission denied her request for TTD compensation.
 {¶ 21} Relator argues that her departure from employment with the employer cannot be deemed to be "voluntary" for purposes of the workers' compensation system because she left her employment with this employer due to the employer's alleged actions of harassment. As such, unlike a situation where an employee is fired due to misconduct on the employee's part, relator contends that where an employee leaves the workforce due to the misbehavior of the employer, then the employee should not be later denied TTD compensation.
 {¶ 22} It is undisputed that, where an employee's own actions, for reasons unrelated to the injury, preclude him or her from returning to his or her former position of employment, he or she is not entitled to TTD compensation, since it is the employee's own action rather than the injury that precludes return to the former position. See State ex rel. Jones Laughlin Steel Corp. v. Indus. Comm. (1985), 29 Ohio App.3d 145. As such, voluntary abandonment of the former position of employment can, in some instances, bar eligibility for TTD compensation. See State ex rel. Rockwell Internatl. v. Indus.Comm. (1988), 40 Ohio St.3d 44. The rationale for these holdings is that it is the employee's actions which break the causal connection between their loss of income and the allowed conditions in the claim.
 {¶ 23} In the present case, it is undisputed that relator had been released to return to work with restrictions at the time she left her employment with the employer. As such, it was relator's own actions, separate and apart from her allowed conditions, which caused her to have a loss of income. Although relator alleges that her employer's actions forced her to leave, it was relator's choice to file a harassment lawsuit and leave her employment. Relator's decision to leave her employment may not have been what she desired; however, it was still her choice to leave and, as such, was voluntary. Her current loss of earnings appears to be a result of the alleged misconduct of her employer and not the allowed conditions in this claim. Relator testified at hearing that she did attempt to find other work. As the court held in State ex rel. Baker v. Indus. Comm. (2000),87 Ohio St.3d 561, when a claimant who is medically released to return to work leaves his or her former position of employment to accept another position of employment, the claimant is eligible to receive TTD compensation in the event the claimant reaggravates the original industrial injury while working at his or her new job. Following Baker, the court recognized that employees are mobile and may leave one job for another. In the event that employee's allowed conditions from an earlier claim are aggravated while the employee is working for a different employer, the court finds that the employee can be entitled to TTD compensation again. The rationale is that the allowed conditions from the earlier claim are currently preventing the employee from working, thereby depriving the employee of income.
 {¶ 24} In the present case, the magistrate finds there is some evidence in the record upon which the commission relied indicating that relator left her former position of employment after having been released to work with restrictions for reasons other than the allowed conditions in her claim. As such, relator broke the causal connection between her allowed conditions and her loss of earnings. Although relator testified she attempted to find other work in the interim, relator did not produce any evidence of her efforts and the commission was entitled to assign whatever weight and credibility the commission deemed appropriate to her testimony. Ultimately, the commission concluded it was relator's own actions in leaving her employment with relator that were causing her current period of loss of earnings and that relator had broken the causal connection between any loss of earnings and the allowed conditions in her claim. Because the commission's order is supported by some evidence in the record, the magistrate finds that relator has not demonstrated that the commission abused its discretion in denying her application for TTD compensation and relator's request for a writ of mandamus should be denied.